**SO ORDERED.**

**SIGNED this 10 day of September, 2007.**



_____
                                 Dale L. Somers
                        UNITED STATES BANKRUPTCY JUDGE

_____

OPINION DESIGNATED FOR ON-LINE PUBLICATION BUT NOT PRINT PUBLICATION

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

In re:

MICHAEL L. BERGMAN and            CASE NO. 07-40285
JOYCE A. BERGMAN,                 CHAPTER 12

                    DEBTORS.

MEMORANDUM OPINION AND ORDER DENYING MOTION OF
NEMAHA COUNTY CO-OP ASSOCIATION FOR RELIEF FROM AUTOMATIC STAY

     The matter before the Court is the Motion of Claimant, Nemaha County Co-op Association for Relief from Automatic Stay (hereafter "Motion"). The movant, Nemaha County Co-op Association, (hereafter "NCCA" or "Co-op") appears by Terry D. Bertholf. Debtors

1

Michael L. and Joyce A. Bergman (hereafter "Debtors") appear by Justice B. King of Fisher, Patterson, Sayler & Smith, L.L.P. There are no other appearances. The Court has jurisdiction.[1]

In the Motion, the NCCA seeks relief from stay pursuant to 11 U.S.C. § 362[2] to permit it to exercise, pursuant to § 553, a set off of the prepetition amount owed to the NCCA by the Debtors against the Debtors' interest in deferred patronage allocations and stock. The NCCA relies upon the articles and bylaws of the Co-op as the source of its offset right. Debtors respond that the NCCA has no right of offset and has not established the elements for relief from stay.

The parties agreed that the issue presented is a question of law and that it would be submitted to the Court by simultaneous briefs, with a right to respond.[3] The Court took the Motion under advisement after receipt of opening briefs, Debtors' response, and expiration of the NCCA's response time. For the reasons stated below, the Court denies the Motion and holds that the NCCA has not established a right to offset its claim.

---

[1] This Court has jurisdiction pursuant to 28 U.S.C. § 157(a) and §§ 1334(a) and (b) and the Standing Order of the United States District Court for the District of Kansas that exercised authority conferred by § 157(a) to refer to the District's Bankruptcy judges all matters under the Bankruptcy Code and all proceedings arising under the Code or arising in or related to a case under the Code, effective July 10, 1984. A motion for relief from stay is a core proceeding which this Court may hear and determine as provided in 28 U.S.C.§ 157(b)(2)(G). There is no objection to venue or jurisdiction over the parties.

[2] Future reference to title 11 in the text shall be to the section only.

[3] Doc. 92. Debtors' opening brief, in addition to addressing whether NCCA is entitled to relief from stay to exercise offset, also addresses whether NCCA's claim is secured by Debtors' patronage credits. The only matter before the court in the Motion and Debtors' objection to the Motion. The Court therefore does not address whether NCCA's claim is secured or unsecured.

**FINDINGS OF FACT**.

The NCCA is a cooperative association organized under the Kansas Cooperative Marketing Act, K.S.A. 17-1601. Debtors[4] are members of the NCCA. The articles of the NCCA provide in relevant part as follows:

> Section 2. The common stock of this association may be purchased, owned, or held only by producers of agricultural products and cooperative associations organized under the Kansas Cooperative Marketing Act, who shall patronize the association in accordance with the uniform terms and conditions prescribed thereby, and only such persons shall be regarded as eligible members of the association. . . . (Articles, Art. VII, Sec. 2).
>
> Section 6. The Bylaws of this association may provide for and establish such non-stock capital accounts or credits as shall be necessary or proper for the purpose of furthering the cooperative character of this association and for the purpose of providing such additional capital as may be required for the continued effective operation of this association. Such non-stock capital accounts may include, but shall not be limited to, stock credits, ledger credits, revolving fund credits, per-unit retains, nonqualified allocation credits, and such other book credits for which provision is made in the Bylaws; and such credits may be redeemed, retired, or repurchased only in accordance with the said Bylaws of the association. This association shall have a lien upon all such non-stock capital accounts or credits, which lien may be exercised only at the discretion and direction of the Board of Directors. (Articles, Art.VII, Sec. 6).

The bylaws of NCCA provide in relevant part:

> Section 1. **QUALIFICATIONS FOR MEMBERSHIP.** Any person, trust, firm, partnership, . . . who is a bona fide producer of agricultural products in the territory in which this company is engaged in business, and who agrees to be a patron of this association and to abide by the Bylaw of this association, may become a member by acquiring one (1) share of common stock and

---

[4] It is not clear whether both Debtors or only Debtor Michael Bergman are members of the NCCA. Since this distinction is not material to the Court's analysis, it assumes that both Debtors are members.

3

meeting such conditions as may be prescribed by the Board of Directors. . . . (Bylaws, Art. I, Sec. 1).

Section 6. **LEDGER CREDITS.** In order to further the cooperative character of the association and provide a means whereby its current patrons will furnish its capital requirements, the association shall establish and maintain a patronage ledger credit fund. The crediting of such savings to the patronage ledger credit account shall, for all purposes, be deemed equivalent to the payment thereof in cash to the patron to whom they are credited and his/her contribution therefor to such fund as capital required for the continued operation of the association. . . . (Bylaws, Art II, Sec. 6).

Section 7. **SETTLEMENT OF ESTATES AND OTHER EQUITY RETIREMENTS.** Notwithstanding any other provision of these Bylaws, the Board of Directors, at its discretion and direction, shall have the power at any time to pay off, retire, or secure a release or satisfaction of any common stock, preferred stock, participating stock, patronage ledger credits, . . . and other book credits, for the purpose of facilitating the settlement of an estate in case of death or of any patron who, at the determination of the Board of Directors has ceased to be a producer of agricultural products or has attained retirement age as defined in, and pursuant to, a plan for the retirement of equities of stockholders and patrons as adopted by the Board of Directors. (Bylaws, Art II, Sec. 7).

Section 9. **SETOFF.** The association, at its option, shall be entitled to set off, against any claims which it may have against any member or participating patron, any amounts which the association may owe the patron. The association may exercise its lien upon the patron's capital investments in the association, as provided in the Articles of Incorporation, and it may set off against any claims which it may have against any member or participating nonmember any amounts which the patron has invested in the capital of the association including, but not limited to, common stock, preferred stock, participation certificates, ledger credits, per unit retains, and nonqualified allocation credits. (Bylaws, Art II, Sect. 9).

Debtors filed for relief under Chapter 12 on March 19, 2007. The NCCA was shown on Schedule F as an unsecured nonpriority creditor owed $4,658.13. The NCCA filed a secured

4

proof of claim for $4,658.13 for "goods sold." Attached to the proof of claim are an invoice for $4,658.13 and an equity listing showing common stock of $1000 and ledger credits of $19,424.31. The NCCA filed its Motion on April 4, 2007,[5] seeking permission to offset its claim against the Debtors' equity in the NCCA. The Debtors opposed the motion.

Debtors have filed a proposed Chapter 12 plan.[6] It contemplates that Debtors will operate their farming business and be active members of the NCCA.[7]

**ANALYSIS AND CONCLUSIONS OF LAW.**

**A. The NCCA is not entitled to relief from stay to exercise set off under § 553.**

The NCCA seeks relief from stay for the purpose of exercising set off. Stay relief may be granted under § 362(d)(1) for cause. The moving party must establish a *prima facie* case, and failure to do so requires dismissal of the motion.[8] Although lack of adequate protection of an interest in property is cause under § 352(d)(1), cause is not so limited.[9] "The moving party has the burden to show that 'cause' exists to lift the stay."[10] When relief from stay is sought for the purpose of exercising set off, the relief may be denied if the movant has not satisfied § 553.[11]

---

[5] Doc. 22.

[6] Doc. 102.

[7] *See* Doc. 107.

[8] 3 *Colliers on Bankruptcy* ¶ 362.10 (Alan N. Resnick & Henry J. Sommer eds.-in-chief, 15th ed. rev. 2007).

[9] *Busch v. Busch (In re Busch)*, 294 B.R. 137, 140 (10th Cir. BAP 2003).

[10] *Id.*, 294 B.R. at 140-141.

[11] *United States v. Myers (In re Myers)*, 362 F.3d 667 (10th Cir. 2004).

5

"The right of setoff (also called 'offset') allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding 'the absurdity of making A pay B when B owes A.'"[12] The bankruptcy code does not create a federal right of set off, but § 553 preserves rights of set off which otherwise exist under state or federal law.[13] "Therefore, the threshold determination is whether an independent right of setoff exists outside of bankruptcy."[14] If such right exists, the court then looks to § 553 "to establish whether the conditions of setoff are satisfied."[15]

**B. NCCA has not established that it has a right of set off under Kansas law.**

As to the nonbankruptcy source of its right to set off, the NCCA relies upon Kansas law. The NCCA, which is organized under the Kansas Cooperative Marketing Act,[16] alleges that under its articles and bylaws it has a right to offset its claim against Debtors' deferred patronage allocations and stock.

The Kansas Supreme Court has summarized the elements of offset as follows:

> First, setoff requires mutuality, meaning that the same parties owe a sum of money to each other. There must be at least two distinct debts or judgments that have matured at the time of the motion for setoff. . . . In addition, the parties and judgments or debts must

---

[12] *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 18 (1995), *quoting Studley v. Boylston Nat. Bank*, 229 U.S. 523, 528 (1913).

[13] *Citizens Bank of Maryland v. Strumpf*, 516 U.S. at 18.

[14] *In re Meyer*, 362 F.3d at 672.

[15] *Id.*, citing 5 *Collier on Bankruptcy* at ¶ 553.01[2].

[16] K.S.A. 17-1601, *et. seq*.

6

coexist, *i.e.*, both must be determined, presently due, and owing at the time of setoff.[17]

In circumstances not materially different from this case, the Kansas Supreme Court has held that the elements of set off are not present. In *Turnbull*,[18] the court reversed a district court which had allowed a cooperative member to set off his equity credits against an open account due the cooperative because the debts were not coexistent (presently due). The court characterized the equity credits as constituting "an interest of a stockholder of a cooperative association which is contingent and not immediately payable."[19] Therefore, the second Kansas requirement for offset identified above, that there be at least two mature debts, was not present. The court thoroughly examined the nature of cooperative equity credits as follows:

> Nonprofit cooperative associations are organized under the provisions of the Kansas Cooperative Marketing Act, K.S.A. 17-1601 *et seq.*, to make profit for their members as producers. . . . The bylaws may state the amount of the annual dividends which may be paid on stock and the manner in which the remainder of the association's profits shall be prorated in the form of patronage dividends to its stockholders. K.S.A 17-1609.
> 
> * * *
> 
> The bylaws of the Co-op provide for the retention of up to 80 per cent of the operating profits that are allocated to Co-op members in order to furnish capital for the Co-op. Each member of the Co-op is credited with his proportionate share of furnished capital on the books of the Co-op. This deferred patronage allocation is termed "equity credits" and may be paid out or redeemed only at the discretion of the board of directors.

---

[17] *Mynatt v. Collis*, 274 Kan. 850, 881, 57 P.3d 513, 534 (2002).

[18] *Atchison County Farmers Union Co-op Ass'n v. Turnbull (Turnbull)*, 241 Kan. 357, 736 P.2d 917 (1987).

[19] *Id.*, 241 Kan. at 360-61, 736 P.2d at 921.

> Equity credits are not an indebtedness of a cooperative association which is presently due and payable to the members, but represent an interest which will be paid to them at some unspecified later date to be determined by the board of directors. Such equity credits represent patronage dividends which the board of directors of a cooperative, acting under statutory authority, has elected to allocate to its patrons, not in cash or other medium of payment, which would immediately take such funds out of the working capital of the cooperative, but in such manner as to provide or retain capital for the cooperative and at the same time reflect the ownership interests of the patron in such retained capital. 18 Am. Jur.2d, Cooperative Associations § 23.
>
> * * *
>
> . . . A member or a stockholder of a cooperative association is bound by the bylaws and cannot contend that when equity credits are allocated upon the books of the association that an indebtedness is created which can be used as a setoff against a debt the member or stockholder owes the association.[20]

This Court followed *Turnbull* when deciding *In re Klaassen*[21] and holding that a Kansas farm cooperative had not established a right to offset a prepetition claim owed by a Chapter 12 debtor against the debtor's patronage account. The relevant articles and bylaws were *identical* to those in this case. This Court stated:

> A creditor and a debtor may by contract determine the scope of their set off rights. Bylaws of a co-op constitute a contract between the cooperative and its members and govern transactions between them. It is clear that the first sentence of article II, section 9 of the bylaws does not trump the holding of *Turnbull*. The first sentence merely authorizes common law set off. It states, "The association, at its option, shall be entitled to set off, against any claims which it may have against any member or participating patron, any amounts which the association may owe

---

[20] *Id.*, 241 Kan. at 359-361, 736 P.2d at 920-921.

[21] *In re Klaassen*, Case no. 01-14724 (Bankr. D. Kan. Oct. 7, 2005, Somers, J.). Counsel for the co-op in *Klaassen* was the same attorney who is counsel for the NCCA in this case. Although substantial portions of the NCCA's brief in this case are identical to the brief filed on behalf of the co-op in *Klaassen*, the *Klaassen* opinion (which rejected the arguments made in this case by counsel for the NCCA) is not cited or referenced in arguments in this case.

8

> the patron." As established by the Kansas Supreme Court in *Turnbull*, under the Kansas Cooperative Marketing Act, patronage credits do not constitute an amount which the association owes the patron.
>
> The second sentence of section 9 of the bylaws addresses the association's "exercise of its lien upon the patron's capital investments in the association," providing that the Co-op "may set off against any claims which it may have against any member or participating nonmember any amounts which the patron has invested in the capital of the association . . ." including stock, participation certificates, and ledger credits. The Co-op's articles of incorporation provide for a lien in [non-stock capital accounts or credits]. . . .
>
> The Court finds this second sentence of section 9 of the bylaws ambiguous. It could be intended to address foreclosure of security interests granted by the articles. If this is the case, it does not address the matter before the Court. . . . On the other hand, the second sentence of bylaw article II, section 9, addressing offset, could have been intended to alter the Kansas Supreme Court's ruling in *Turnbull* and to provide that equity credits and other financial interests enumerated in the bylaws are debts owed to the patron or the stockholder so that offset is available. The current state of the record does not permit the Court to make a choice between these possible interpretations. The Court is unable to rule whether the Co-op has a right of offset under Kansas law.[22]

The Court therefore held the co-op in *Klaassen* failed to establish a right of offset.

The NCCA cites *Turnbull* and does not contend it was wrongly decided. The NCCA provides no facts which distinguish this case from *Klaassen*. The NCCA merely argues that the bankruptcy estate would benefit by the offset because the estate's obligations would be reduced. The NCCA also provides no authorities which could support a finding of a right of offset under

---

[22] *Id.*, sl. op. 8-11. The Court noted that other bankruptcy courts have held that a co-op is not entitled to offset a debtor's obligation to it against the debtor's patronage account. *E.g.*, *Taylor v. Assumption Cooperative Grain Co. (In re Beck)*, 96 B.R. 161 (Bankr. C. D. Ill. 1988)(co-op organized under Illinois law); *Nelson v. Cavalier Rural Electric Co-operative of Langdon, N D (In re Axvig)*, 68 B.R. 910 (Bankr. D.N.D. 1987)(co-op organized under North Dakota law); and *Sherman v. Eugene Farmers Cooperative (In re Cosner)*, 3 B.R. 445 (Bankr. D. Or. 1980)(co-op organized under Oregon law).

9

Kansas law. The NCCA's citations are to cases decided under the laws of other states addressing issues other than offset. The NCCA's primary authority in support of its Motion is *In re FCX*.[23] That case did not address offset. The issue presented was whether the court erred in approving a modification of a Chapter 11 plan which authorized debtor to release its interests in patronage certificates in satisfaction of a cooperative's claim. The court held that § 1125(a)(5)(D) enlarged the scope of debtor's rights from those existing under Minnesota state law and provided the bankruptcy court with the authority to authorize FCX to surrender patronage certificates even if that surrender was not permitted under the bylaws. In this case the issue is offset under § 553, which follows rather than expands rights under state law. *Wabash Valley Power*,[24] also relied upon by NCCA, did not concern relief from stay or offset under Kansas law. It, like *FCX*, addressed confirmation issues. The cooperative was formed under Indiana law.

For the same reasons as enumerated in *Klaassen*, the Court holds that the NCCA has not established that it has a right of offset under Kansas law. Because § 553 offset requires authority to offset under nonbankruptcy law, the Court holds the NCCA has failed to establish that *prima facie* case of right to offset under § 553. The Motion must therefore be denied.

---

[23] *Universal Cooperatives, Inc. v. FCX, Inc. (In re FCX, Inc.)*, 853 F.2d 1149 (4th Cir. 1988).

[24] *In re Wabash Valley Power Ass'n, Inc.*, 72 F.3d 1305 (7th Cir. 1995).

**C. Assuming NCCA's articles and bylaws establish a right to set off under Kansas law, NCCA has not satisfied the elements for set off under § 553.**

As set forth above, if NCCA had a right to set off under Kansas law, it would not be entitled to relief from stay to exercise set off under § 553 unless it also satisfied the elements for relief under § 553. The portion of § 553 relevant to this proceeding is the following:

> (a) Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case . . .

In general, § 553 preserves the right of set off when four conditions exist: (1) The creditor holds a claim against the debtor that arose prepetition; (2) the creditor owes a debt to the debtor that arose prepetition; (3) the claim and the debt are mutual; and (4) the claim and the debt are valid and enforceable.[25]

In this case, NCCA has not established these four elements. Only the first is clearly present. It is undisputed that Debtors owe a prepetition debt to NCCA.

NCCA has not established the second element. There is no showing that NCCA owes a prepetition debt to the Debtors. The articles and bylaws provide for the creation of patronage credits, but they do not provide that they are payable to the members in the circumstances of the Debtors. Section 7 of the bylaws grants the board of directors discretion to pay off patronage ledger credits and stock only for "the purpose of facilitating the settlement of an estate in case of death or of any patron who, at the determination of the Board of Directors has ceased to be a

---

[25] 5 *Collier on Bankruptcy* at ¶553.01[1].

11

producer of agricultural products or has attained retirement." None of these circumstances are present here; Debtors intend to continue farming in the Co-op's territory.

For the same reasons relevant to the second element, the fourth element, that the claim and the debt be enforceable, is not present. NCCA has not shown that Debtors have an enforceable claim against it for the value of their patronage account and stock.

The NCCA has not made a *prima facie* case of entitlement to offset under § 553.

**CONCLUSION.**

For the foregoing reasons, the Court denies Motion of Claimant, Nemaha County Co-op Association for Relief from Automatic Stay. NCCA has failed to satisfy its burden to establish relief for cause. Where, as here, the cause alleged is to exercise set off under § 533, the movant must establish both a pre-existing right to set off under nonbankruptcy law and satisfy the elements of § 553. NCCA has done neither. NCCA has not shown a right to set off its claim against Debtors' patronage credits and stock under Kansas law. NCCA has not shown that it owes an enforceable prepetition debt to Debtors.

The foregoing constitute Findings of Fact and Conclusions of Law under Rules 7052 and 9014(c) of the Federal Rules of Bankruptcy Procedure which make Rule 52(a) of the Federal Rules of Civil Procedure applicable to this matter. A judgment based upon this ruling will be entered on a separate document as required by Federal Rule of Bankruptcy Procedure 9021 and Federal Rule of Civil Procedure 58.

**IT IS SO ORDERED.**

###

12

Case 07-40285    Doc# 167    Filed 09/10/07    Page 12 of 12